CHARLES P. GROVES, Appellee, v. EMMA GROVES, Appellant.

DIVORCE: Cruel and Inhuman Treatment—Insufficiency of Evidence to Establish. Evidence reviewed and held insufficient to justify a decree of divorce on the grounds of cruel and inhuman treatment.

*Appeal from Lee District Court.*—HON. W. S. HAMILTON, Judge.

FRIDAY, JUNE 18, 1915.

ACTION for divorce. Decree for the plaintiff and defendant appeals.—*Reversed.*

*E. C. Weber,* for appellant.

No appearance for appellee.

WEAVER, J.—The plaintiff petitioned for divorce because of alleged cruel and inhuman treatment endangering his life. Defendant denied the charges of cruelty and averred in substance that in so far as she upon any occasion said or did anything to the injury of plaintiff she had been provoked or driven thereto by the misconduct of the plaintiff and by his ill-treatment of her. She further alleges that her acts, if any, of which plaintiff could have truthfully complained were afterwards condoned by him. She further charges him with wilful desertion of her, and expresses her willingness to restore their family relations and to live with plaintiff as his wife. The trial court found for the plaintiff and granted him a divorce, but adjudged and required him to pay to the defendant a stated sum for the support of their infant son and to pay the costs of the action. The defendant appeals.

As the appellee has made no appearance in this court, there is no argument or statement of his theory of the case, except as we may obtain it from his petition and the record of the trial in the court below. Looking to the abstract, we find that in his original petition the allegations of cruel treatment are confined to the charge that, in the presence of his family and throughout the neighborhood, defendant "circulated false and malicious reports concerning her husband," and that in July, 1912, she drew and pointed a revolver at the plaintiff and threatened to take his life. No attempt was made to specify the nature of the false and malicious reports, nor was there any allegation that such conduct on defendant's part had any tendency to endanger the plaintiff's life. Later, and after defendant had appeared and answered, plaintiff amended his petition by alleging that defendant had been guilty of inhuman treatment endangering his life, in that, in the year 1910, defendant without provocation assaulted him and struck him with a stove poker; that when he was ill she refused to procure him medical attendance; that she often gave way to fits of ungovernable temper

1. DIVORCE: cruel and inhuman treatment: insufficiency of evidence to establish.

and habitually swore at plaintiff and called him vile names; and that her course of conduct in this respect "impaired the health of plaintiff to the extent herein stated."

The evidence shows that the parties were married in the year 1900 and that they lived together until August, 1912, when plaintiff left his wife and home and went to Chicago, Illinois. When leaving, he kissed his wife good-by and told her he would send for her to come to Chicago. It is very plain, however, that he did not intend to live with her any longer. He did not send for her or return to her and four months later, began this action for divorce. It is quite clear that the parties did not live happily together. It is equally plain that, aside from negligible incidents of ill temper or petulance on one or both sides, the only real trouble between them is the outgrowth of jealousy. On one occasion, plaintiff was excited to anger over what he considered the unbecoming freedom of conduct between his wife and a street car conductor and this led to an angry altercation between the parties; but as this is the only incident in which he questioned her relations with other men and it occurred more than two years before their family relations were broken, it has no material significance in this case. It is undisputed, however, that for a year or two before they separated, defendant became very jealous of her husband's attentions to other women named in the record and that, growing out of this fact, there was continued bickering between them and defendant expressed her indignation quite freely to others. It is equally clear that defendant had excellent reasons for her jealousy, and whatever may be thought of the wisdom or propriety of the manner in which she manifested her resentment, it was not unnatural, and the husband who continually provoked it is the last person in the world who should be heard to complain of it, and least of all should it be made the ground for equitable relief in his favor. He admits that, while still living with his wife, he made the acquaintance of a young woman in another city, to whom he was introduced as a single

man, and that he carried on a correspondence of a more or less mushy character with her. A part of this correspondence came into the defendant's possession. Later, he paid very close and constant attention to a woman living in the same neighborhood with his family and went with her to various entertainments and functions without asking his wife to accompany them. There is also evidence that the woman in the case was divorced, that plaintiff assisted her in getting her divorce, and that afterwards, while she was living alone, plaintiff often called upon her. He knew that his wife was jealous and objected to his intimacy with the woman but he persisted in that line of conduct. As a natural result of these conditions, there occurred in June or July, 1912, the one quarrel in which any attempt at or act of physical violence is shown. The woman referred to came to the door of the house where the parties lived and entered, or was about to enter, when defendant objected to her presence and ordered her away. Thereupon plaintiff interfered and said she need not go. Defendant became excited and ran into a bedroom where a revolver was kept and laid hold of it for the purpose, as she says, of driving the woman out of the house. The plaintiff followed his wife, seized and struck her and wrested the revolver from her hand. Describing the struggle, he himself says, "I grabbed her and she said, 'You get away,' and I slapped her and threw her on the bed. It all arose from Mrs. Tufts being there. That is, that part of it started from that and Mrs. Groves got a black eye as the result. We lived together as man and wife after that." Again he says, "I struck her with my right hand. I slapped her on the jaw and finally got hold of her and threw her on the bed and took the gun away from her." Even after this, they resumed family relations, and from that time on, the plaintiff shows no other act of violence or anything which by any stretch of imagination could be called cruel or inhuman treatment endangering his life. He says he intended to return to his wife from Chicago and would have done so, only he heard

that she had taken legal advice upon the subject of prosecuting him for desertion, and thereupon he forestalled such action by suing for divorce.

The record is without support for the conclusion that the life of plaintiff has been endangered in any manner by the alleged abuse or cruelty of the defendant, and the charge that she neglected plaintiff in sickness is not proven. So lacking is the case in all apparent merit that it suggests a doubt whether the whole record is before us, but the appeal appears to have been regularly taken and the abstract purports to present all the evidence material to the issues tried. Upon such showing and in the absence of any appearance by the appellee to question or deny it, we are bound to accept it and reach our conclusions therefrom. We have, therefore, to hold that the petition for divorce should have been dismissed.

The decree below must be reversed, except as to the taxation of costs. Costs of this court will be taxed to the appellee. —*Reversed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.